United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 8, 2004**

Charles R. Fulbruge III
Clerk

REVISED JUNE 9, 2004
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 03-10167

———————————————

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

WILLIAM CLARK TAYLOR

Defendant - Appellant

———————————————————————————————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
No. 3:02-CR-163-1-D

———————————————————————————————————————————————————

Before KING, Chief Judge, and REAVLEY and EMILIO M. GARZA,
Circuit Judges.

PER CURIAM:*

William Taylor appeals both his conviction and his sentence

for knowingly possessing a firearm silencer.  We affirm.

I.    FACTUAL AND PROCEDURAL BACKGROUND

While enforcing a court-ordered eviction at Taylor's

automotive shop, Dallas constables discovered approximately

thirty-five weapons, many modified, and a number of what appeared

———————————————

*    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

to be homemade silencers.  The constables called the Bureau of Alcohol, Tobacco, and Firearms, who sent agents to the site. Taylor consented, in writing, to allow ATF agents to search the premises.  ATF Special Agent Joseph Patterson seized silencers found on Taylor's workbench and elsewhere.[1]

When questioned about the silencers, Taylor admitted that he had tried to make silencers with the help of a book entitled "How to Build Practical Firearms Suppressors: an Illustrated Step-by-Step Guide."  Agent Patterson discovered this book inside a briefcase near the workbench where the silencers were found. Taylor signed a written confession, which stated:

> On Friday, December 8, 2000, I consented to the search of my business to ATF Special Agent Joseph A. Patterson. . . .  I also told [Special Agent] Patterson that I had found a couple of firearm silencers and I decided to make them a little better.  I bought a book on how to make firearm silencers and I began to . . . make silencers. . . .  I made firearm silencers a couple of times and I stuffed them on the end of my guns and fired them.  The silencers I made did not work very well. Someone told me to quit making silencers because I would be arrested.

Special Agent Patterson later confirmed that Taylor had not registered the silencers with the National Firearms Registration and Transfer Record.

Taylor was charged in a four-count indictment with several

---

[1]     The silencers (approximately ten or eleven in all) varied greatly and were made from all sorts of common materials. For example, one was a piece of plastic tubing wrapped in black tape with a rubber cap on the end, another was a metal cylindrical object with rubber insulation inside of it, and yet another was a rubber tube with threads inside it and an end cap.

firearms offenses, including possession of unregistered silencers and silencer parts, in violation of 26 U.S.C. §§ 5845(a)(7) and 5861(d).[2]  Taylor pleaded not guilty.

In his defense, Taylor took the witness stand.  He testified that he had ordered the how-to book on making silencers two years before his eviction, when there was a Japanese fighting dog terrorizing the neighborhood.  By the time the book arrived, however, the dog had died.  Consequently, according to Taylor, he was no longer interested in making silencers when he received the book.  Taylor also testified that he did not know he was in possession of silencers and that he did not intend for the items seized to be silencers.

Notwithstanding Taylor's testimony, the jury found Taylor guilty of knowingly possessing silencers.[3]  The district court concluded, based on Taylor's trial testimony, that he had perjured himself.  Thus, the district court increased Taylor's sentencing range by two levels, pursuant to U.S.S.G. § 3C1.1.  In

---

[2]    Section 5861(d) makes it unlawful for any person "to . . . possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Section 5845(a) defines the term "firearm" to include "any silencer, as defined in 18 U.S.C. § 921."  Under 18 U.S.C. § 921(a)(24), a "silencer" is "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

[3]    The jury found Taylor not guilty of the three remaining firearm counts.

accordance with this new range, the district court sentenced Taylor to fifty-two months' imprisonment followed by three years of supervised release.

## II.    SUFFICIENCY OF THE EVIDENCE

Taylor argues that the district court erred by denying his motion for judgment of acquittal.  According to Taylor, the government's evidence was insufficient to show (1) that he knew the items were firearm silencers and intended for them to be firearm silencers and (2) that the supposed firearm silencers were "in or could readily have been put in operating condition." Since Taylor preserved his challenge to the sufficiency of the government's evidence, we review de novo the district court's denial of his motion for judgment of acquittal.  United States v. Carbajal, 290 F.3d 277, 289 (5th Cir. 2002).  The question is whether, viewing the evidence in the light most favorable to the government, a rational jury could conclude that the government proved all elements of the offense beyond a reasonable doubt. Id.

We conclude that the government's evidence was sufficient to show that Taylor knew that the items in his possession were firearm silencers and that he intended for them to be silencers. Taylor argues that, because he is an experienced mechanic, if he intended for the items to be silencers, they would have worked. Yet, Taylor conceded that he had possessed silencers in the past

4

and that he had been interested in building silencers. Furthermore, Taylor signed a confession admitting that he was trying to make silencers with the help of a book entitled "How to Build Practical Firearms Suppressors: an Illustrated Step-by-Step Guide." Agent Houde testified that the silencers found in Taylor's possession were "very consistent" with the silencers illustrated in the how-to book. Finally, one of the silencers was found attached to a firearm. Thus, the evidence supports the jury's determination that Taylor knew and intended for the items found in his shop to be silencers or silencer parts.

The jury instructions also required the government to prove that the silencers were "in or could readily have been put in operating condition." Taylor argues that there is no evidence that the silencers actually worked. Indeed, Agent Alfred Houde, who examined the items found in Taylor's shop, testified that he was unable to determine whether the silencers were functional because "on each selected sample they blew off the gun and blew down range or came apart after the initial shot." But, contrary to Taylor's assertion, the government did not have to prove that the silencers were in operating condition; it merely needed to prove that they could readily have been put into operating condition. And the evidence is sufficient to support this conclusion. Agent Houde testified that the silencers were "in or could readily have been put in operating condition." According to Agent Houde, many of the silencers were "very consistent" with

those described in Taylor's how-to book.  Furthermore, Agent Houde opined that, if properly made, the silencers illustrated in the how-to book would work.  Agent Houde explained that affixing the silencers to the firearms, with tape or bondo, would have helped the silencers stay on the firearms.  Given all this, as well as Taylor's mechanical ability, the jury could have concluded beyond a reasonable doubt that Taylor could readily have put the silencers into operating condition.

### III.    SENTENCING ENHANCEMENT

Taylor argues that the district court erred by finding that he had committed perjury and, on this basis, enhancing his sentence for obstruction of justice under U.S.S.G. § 3C1.1.[4]  We review the district court's perjury determination for clear error.  United States v. Gonzalez, 163 F.3d 255, 263 (5th Cir. 1998).

The district court found that the following statements given by Taylor at trial were false:

> . . . that he was no longer interested in making a silencer at the time he got the book on how to make silencers, because the problem he needed it for had already taken care of itself and he did not need it anymore;
>
> . . .

---

[4]    Taylor also contends that it is unfair to increase his sentencing range for three statements that the jury did not even credit.  Since there is no requirement, however, that the jury actually believe the defendant's perjured testimony, this argument is unavailing.

. . . that he did not know he was in possession of silencers and that they would be considered silencers; and

. . . that he did not intend for anything in Government Exhibit 5--the box containing Government Exhibits 5A and 97-107--to actually be a firearm silencer or suppressor.

Taylor contends that these three statements were not false. We conclude, however, that the district court did not clearly err in finding otherwise. Taylor's first statement directly contradicts the written confession he gave to the government, wherein he admitted the following: "I bought a book on how to make firearm silencers and I began . . . to make silencers." Further, the evidence discussed above supports the conclusions that Taylor knew that he possessed silencers and that he intended for the items to be silencers. Consequently, we hold that the district court correctly increased Taylor's offense level by two under U.S.S.G. § 3C1.1.[5]

### IV.    CONCLUSION

For the foregoing reasons, we AFFIRM both Taylor's conviction and his sentence for knowingly possessing a firearm silencer.

---

[5]    In a footnote, Taylor also complains that it is fundamentally unfair to make defendants choose between not testifying, and risking "a jury's wrath," and testifying, and being subjected to a two-level sentencing increase for perjury. As the Supreme Court noted in United States v. Dunnigan, however, "a defendant's right to testify does not include a right to commit perjury." 507 U.S. 87, 96 (1993). Thus, Taylor's argument has no merit.

7